**UNTIED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

MARIAN TANKERSLEY and RICHARD
DIEHL,

               Plaintiffs,

v.                                                    CASE NO. 11-12847

                                  HON. MARIANNE O. BATTANI

JOHN LYNCH, GREGORY A. LONGE,
LOUIS MANCINA, JOHN MAIO, and
RICHARD BASS,

               Defendants.
_____/

**OPINION AND ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT AND DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

      This matter is before the Court on Defendants' Motion for Summary Judgment

Pursuant to Rule 56 (Doc. 24) and Plaintiffs' Motion for Summary Judgment, or in the

alternative, Partial Summary Judgment Against Individual Defendants (Doc. 26).  In this

case arising under Section 32 of the Michigan Franchise Investment Law ("MFIL"),

Plaintiffs Marian Tankersley and Richard Diehl, former franchisees of Collision on

Wheels International, L.L.C. ("CoW"), seek to hold CoW's former officers, Defendants

John Lynch, Gregory Longe, Louis Mancina, John Maio, and Richard Bass, jointly and

severally liable for a $566,820 arbitration award they obtained against CoW for its

multiple MFIL violations.  For the reasons that follow, the parties' motions are both

**DENIED**.

**I.**       **STATEMENT OF FACTS**

      **A.**      **Plaintiffs' Franchise Agreement with CoW**

In April 2007, Plaintiffs Marian Tankersley and Richard Diehl entered into a franchise agreement with CoW, a mobile auto body repair business operating out of specially equipped vans. Prior to the parties executing this agreement, CoW provided Plaintiffs with a 276-page Uniform Franchise Offering Circular ("UFOC"). (Doc. 26 Ex. I). The UFOC contained information concerning the nature of the business offered by CoW. For about a year and a half, Plaintiffs operated their mobile repair business in and around San Jose, California.

By December 2008, Plaintiffs' relationship with CoW had soured. Plaintiffs believed that CoW had misled them concerning certain aspects of the franchise business. They specifically claimed that CoW failed to disclose material differences between the predecessor business and franchised business, failed to disclose restrictive environmental regulations, and maintained that CoW's use of a spreadsheet to show future earnings was misleading. As a result, Plaintiffs informed CoW they were rescinding the franchise agreement and would seek damages through arbitration.

**B.     The Arbitration Between Plaintiffs and CoW**

On January 22, 2009. Plaintiffs served CoW with an arbitration demand pursuant to the arbitration clause in the franchise agreement. (Doc. 24 Ex. 1). Plaintiffs alleged, inter alia, that CoW violated Sections 5(b)[1] and 8 of the MFIL. Section 5(b) prohibits a franchisor from misstating material facts in a UFOC or omitting material facts necessary to make the statements accurate. Section 8 regulates the form in which a franchisor may provide information to a prospective franchisee. Plaintiffs further alleged CoW

---

[1] For ease of reading, citations to sections of the MFIL refer to their internal section numbers, i.e., MFIL section 5 refers to Mich. Comp. Law § 445.1505.

committed common law fraud and misrepresentation.   CoW filed a counterclaim for breach of the franchise agreement.

Plaintiffs and CoW participated in a ten-day arbitration in Detroit, Michigan during January 2010.  (Doc. 24 Ex. 2).  Six months later, in a twenty-five page, single-spaced "interim" award setting forth detailed findings of fact and conclusions of law regarding the substantive issues, the arbitrator found that CoW violated Sections 5(b) and 8 of the MFIL and awarded Plaintiff $71,181.31 in damages.  (Id. at 24).  The parties stipulated beforehand that the arbitrator would enter an "interim" award on the merits and reserve issuance of a "final" award until after the parties briefed and argued the issues of attorney fees and costs that were to be awarded to the prevailing party.

After Plaintiffs submitted their opening brief on these issues, CoW filed for bankruptcy in the Eastern District of Michigan.  (Doc. 26 at 3).  Plaintiffs successfully obtained relief from the automatic stay to complete the arbitration. The arbitrator then issued a "final" award granting Plaintiffs $33,579.00 in interest, $83,986.92 in costs, and $378,072.98 in attorney fees.  (Doc. 24 Ex. 3).  Plaintiffs confirmed both awards in the Eastern District of Michigan on June 6, 2011.  See Tankersley et al. v. Collision on Wheels International, L.L.C., Case No. 11-cv-10901.  Plaintiffs' total award against CoW was $566,820.21.

### C.   The Instant Lawsuit

In their arbitration demand directed to CoW in January 2009, Plaintiffs requested that Defendants John Lynch, Gregory Longe, Louis Mancina, John Maio, and Richard Bass, the executive officers of CoW, voluntarily join the arbitration so that Plaintiffs could pursue Section 32 claims against these individuals.  (Doc. 28 at ¶ 2).  Section 32

3

imposes joint and several liability on persons who control a franchisor that violates the MFIL, as well as employees who materially aid in the transaction constituting the violation.  Defendants refused to be named as parties in the arbitration.  The Court notes Defendants were under no duty to arbitrate because they were not parties to the franchise agreement which contained the operative arbitration clause.  Since they did not agree to arbitrate Plaintiffs Section 32 claims, Plaintiffs filed the instant action against Defendants in the California Superior Court on October 30, 2009, while simultaneously pursuing their claims against CoW in arbitration.  (Doc. 1).  Defendants timely removed to the U.S. District Court for the Northern District of California on diversity grounds.  The parties thereafter agreed to a stay of the action pending resolution of the arbitration.

Once Plaintiffs confirmed their $566,820.21 award against CoW, they returned to the Northern District of California and resumed their Section 32 litigation against Defendants.  The parties' motion practice ultimately resulted in that court transferring the case to the Eastern District of Michigan.  Two months after it was docketed here, without having conducted any discovery, the parties filed cross-motions for summary judgment.  (Doc. 24; Doc. 25; Doc. 26).  The Court heard oral argument on December 9, 2011.

### D.    The "Interim" Award

The Court reviews the "interim" award in further detail because the arbitrator's findings regarding each MFIL violation, and the evidence set forth to establish those violations, are relevant to the issues raised in the parties' motions.

4

### 1.   MFIL Section 8 and the Spreadsheets

The applicable disclosure rules[2] prohibited CoW from providing Plaintiffs with financial information and future earnings predictions outside of their UFOC. Notwithstanding these prohibitions, CoW provided Plaintiffs with spreadsheets designed to predict future earnings wholly separate from their UFOC.  The arbitrator found that these spreadsheets violated Section 8 because they contained information regarding earnings claims outside of the UFOC.  (Doc. 24 Ex. 2 at 5-6).  The arbitrator also found that CoW and an unidentified number of its "agents" had violated Section 8 by improperly assisting Plaintiffs in filling out the spreadsheets.  (Id. at 6).  The Arbitrator further found that the context in which CoW gave Plaintiffs the spreadsheets, even had they been blank, violated the UFOC disclosure guidelines and created yet another violation of Section 8.  (Id. at 7).  In sum, the arbitrator found that COW's use of spreadsheets designed to project future earnings constituted three independent violations of Section 8.

### 2.   MFIL Section 8 and the Non-Disclosure of the Differences Between the Predecessor Business and the Franchise Business

The arbitrator also found CoW liable under Section 8 for not disclosing material differences between the franchise being offered and the predecessor business, which Defendants Maio and Mancina founded some time ago.  (Id. at 8-11).  Since the UFOC contained financial information relating to the predecessor business, CoW was required to disclose any material differences between the franchise being offered and predecessor business upon which it was based.  The arbitrator found that CoW failed to

---

[2] The North American Securities Administrators Association disclosure rules governed the format and content of the UFOC in this case.

disclose that the vans used in the franchised business, which utilize a battery inverter system to power their tools, were not substantially similar to the predecessor business which used vans equipped with gas-powered generators. The battery inverter system was apparently underpowered for the repair work and created numerous problems for Plaintiffs.  The arbitrator specifically noted that CoW "was simply wrong in its belief, and thus its assertion that the franchise's power systems were comparable and substantially similar to the predecessor and company-owned operations." (Id. at 15)  As a result, the arbitrator found CoW liable under Section 8 for not disclosing material differences between the two businesses.

### 3.    MFIL Section 8 and the Non-Disclosure of Environmental Regulations

As for another basis of relief under Section 8, the arbitrator found CoW liable for not disclosing certain industry-specific environmental regulations that applied to the franchise. (Id. at 11-14)  The arbitrator determined that Plaintiffs' franchise was subject to certain California industry-specific environmental regulations.  CoW did not disclose these regulations.  Instead, it included a statement in the UFOC that CoW was "not aware" of any regulations that specifically apply to the franchise.  The arbitrator found that CoW was required to disclose all applicable regulations that exist, not merely whether it knew or did not know of such regulations.  The arbitrator further determined that a local air quality regulation directly applied to franchise because of the chemicals used in automotive paint.  Since CoW failed to disclose the applicable regulations in the UFOC, the arbitrator found CoW liable under Section 8.

### 4. MFIL Section 5(b)

The arbitrator further determined that CoW's failure to disclose the material differences between the predecessor business and the franchise business provided additional grounds for relief Section 5(b).  (Id. at 14-15).

### 5. Common Law Fraud and Misrepresentation Claims

The arbitrator did not grant Plaintiffs relief on their common law fraud and misrepresentation claims.  (Id. at 20).  Although he found that CoW made inaccurate statements, the arbitrator stated CoW did not know they were false or misleading and, in any event, Plaintiffs' damages causation proofs were lacking.  (Id.).  As for the non-disclosed differences between the predecessor business and the franchise business, the arbitrator stated: "the record does not support a finding that [CoW] knew of the inadequacies of the vans' battery/inverter power supply systems at the time of its preparation of its UFOC or at the time the UFOC was given to the Claimants, so the findings herein are not of fraud, but of misrepresentation."  (Id.).  The arbitrator also found that the statement in the UFOC that CoW was "not aware" of any applicable regulations was an accurate and true assertion because at that time, CoW had no knowledge of any such regulations.

## II. STANDARD OF REVIEW

Summary judgment is appropriate only when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. Pro. 56(a). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52

(1986).  Rule 56 mandates summary judgment against a party who fails to establish the existence of an element essential to the party's case and on which that party bears the burden of proof at trial.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323.  Once the moving party meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).  The Court "must lend credence" to the non-moving party's interpretation of the disputed facts.  Marvin v. City of Taylor, 509 F.3d 234, 238 (6th Cir. 2007) (citing Scott v. Harris, 127 S.Ct. 1769, 1775 (2007)).  The non-moving party may not rest upon its mere allegations, but rather must set out specific facts showing a genuine issue for trial.  Fed. R. Civ. P. 56(c)(1). The mere existence of a scintilla of evidence in support of the non-moving party's position will not suffice. Rather, there must be evidence on which the jury could reasonably find for the non-moving party.  Hopson v.DaimlerChrysler Corp., 306 F.3d 427, 432 (6th Cir. 2002).

## III.    ANALYSIS

### A.    MFIL – Section 32

In this case, Plaintiffs seek to hold Defendants jointly and severally liable under Section 32 of the MFIL for the arbitration award they obtained against CoW.  Section 32 provides:

> A person who directly or indirectly controls a person liable under this act, a partner in a firm so liable, a principal executive officer or director of a

corporation so liable, a person occupying a similar status or performing similar functions, an employee of a person so liable who materially aids in the act or transaction constituting the violation, is also liable jointly and severally with and to the same extent as the person, unless the other person who is so liable had no knowledge of or reasonable grounds to believe in the existence of the facts by reason of which the liability is alleged to exist.

MICH. COMP. LAWS § 445.1532.

Section 32 creates a rebuttable presumption of joint and several liability for officers, directors, partners, certain employees, and for others who "control" a franchisor found liable under the MFIL. See Kohr v. Gropp & Lehman Enters., 718 F.2d 1099 (6th Cir. 1983) (Table) (explaining that Section 32 "clearly indicates" the franchisor control persons are to be held jointly and severally liable with the franchisor unless they had no knowledge of the relevant facts); see also Banek Inc. v. Yogurt Ventures U.S.A., Inc., 6 F.3d 357, 362 n.3 (6th Cir. 1993) (recognizing that Section 32 imposes joint and several liability on the owners, directors, officers, and employees for the franchisor's MFIL violations). The statute provides an affirmative defense for individuals saddled with potential liability: an officer is not liable for the franchisor's violation if he or she "had no knowledge of or reasonable grounds to believe in the existence of the facts by reason of which the liability is alleged to exist." MICH. COMP. LAWS § 445.1532.

The Court agrees with the Sixth Circuit's observation that Section 32 "is not a model of clarity." Kohr, 718 F.2d at 1099. The statute does not define the phrase "directly or indirectly controls a person liable" nor describes the level of involvement an employee must have in a franchisor's statutory violations to be "materially aid[ing]" the conduct. Relatedly, the decision law interpreting Section 32 is almost nonexistent.

Although this section presents certain statutory construction issues, the Court is not without guidance.

Michigan courts have acknowledged that the MFIL is to be "'broadly construed to effectuate its purpose of providing protection to the public.'" Little Caesar Enters. v. Dep't of Treasury, 575 N.W.2d 562, 564 (Mich. Ct. App. 1997) (quoting MICH COMP. LAWS § 445.1501). Indeed, courts interpreting other MFIL sections have observed "the general purpose of the MFIL is to protect the rights of franchisees." Franchise Mgmt Unlimited, Inc. v. America's Favorite Chicken, 561 N.W.2d 123, 127 (Mich. Ct. App. 1997) (citations omitted). The Sixth Circuit has described the MFIL as a "comprehensive and paternalistic" law reflecting the public policy of Michigan. Banek, 6 F.3d at 247. Accordingly, the Court answers interpretive questions with a liberal construction to effectuate the legislative intent behind the MFIL. Lorencz v. Ford Motor Co., 483 N.W.2d 844, 848 (Mich. 1992) ("[T]he primary objective in statutory interpretation and construction to effectuate legislative intent without harming the plain wording of the act.").

**B.    Plaintiffs' Section 32 Claim**

Plaintiffs carry the burden of establishing their Section 32 claim against Defendants with proof that: (1) CoW violated the MFIL; (2) CoW is liable to Plaintiffs for its violation of the MFIL; and (3) Defendants are individuals who directly or indirectly "controlled" CoW, are principal executive officers or directors of CoW (or persons occupying a similar position), or employees of CoW who "materially aided" in the acts constituting the MFIL violations.

10

If Plaintiffs can establish the prima facie case, Defendants can rebut the presumption of liability with proof that they had no knowledge of or reasonable grounds to believe in the existence of the facts that created COW's liability.  With the contours of Plaintiffs' claim defined, the Court separately analyzes each of the parties' motions. See Krygoski Const. Co., Inc. v. City of Menominee, 431 F.Supp.2d 755, 761 (W.D. Mich. 2006) ("[T]he court must consider each motion [for summary judgment] separately on its own merits to determine whether either of the parties deserves judgment as a matter of law.").

### C.   Defendants' Motion for Summary Judgment

Advancing a defensive, non-mutual use of the collateral estoppel[3] doctrine, Defendants argue they are entitled to summary judgment because the arbitration findings made in connection with Plaintiffs' common law claims conclusively establish the "no knowledge" affirmative defense of Section 32.   Plaintiffs maintain collateral estoppel is inapplicable because the issues actually litigated and determined in the arbitration, and the burdens of proof associated with those issues, are separate and distinct from the burdens and issues raised in this litigation.  Before reviewing the merits of these positions, the Court notes a choice of law question alluded to in the briefs, though not directly argued by either side.

### 1.   Choice of Law

The parties have not squarely addressed the complex choice of law question as to whether state or federal law on issue preclusion applies in determining the preclusive effect of an arbitration award that resolved state-law issues but that was confirmed by a

---

[3] The term "collateral estoppel" is synonymous with the "issue preclusion".

federal court judgment.  See 18 CHARLES A. WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE 2d § 4475.1 (Supp. 2011) ("The source of the law that governs the preclusion consequences of an arbitration award has not been much developed.").

Defendants claim Michigan preclusion law applies because the franchise agreement between Plaintiffs and CoW calls for the application of Michigan law.  See (Doc. 24 Ex. 1 at 17-18).  Plaintiffs did not address this contractual choice of law argument.  Their response brief simply assumes without analysis that federal law applies.  At the hearing, Plaintiffs did not argue for an exclusive application of federal law, nor did they concede that Michigan law applied.  Instead, they explained their response to Defendants collateral estoppel argument applies with equal force under either source of law.

Notwithstanding Plaintiffs' acquiesce in the application of Michigan law, the Court doubts whether the franchise agreement controls the choice of law.  First, Defendants admit they were not parties to that agreement and CoW is not a Defendant here.  Second, Plaintiffs' Section 32 claim does not involve interpretation or enforcement of the franchise agreement.  Third, although Plaintiffs failed to identify the controlling authority that calls for the application of federal preclusion law, in the Sixth Circuit, "a federal court sitting in diversity looks to federal law on collateral estoppel to determine the preclusive effect of a prior federal judgment."  Logan Farms v. HBH, Inc. DE, 282 F.Supp.2d 776, 787 (S.D. Ohio 2003) (citing JZG Resources, Inc. v. Shelby Ins. Co., 84

F.3d 211, 213-14 (6th Cir. 1996)).[4]  Given the lack of precise briefing on the choice of law issue, it is unclear which body of collateral estoppel law applies in this matter. Fortunately, the Court need not conclusively resolve this question because there is little difference between the Michigan and federal formulations of the collateral estoppel doctrine.  Citations to both federal and Michigan collateral estoppel law are provided to demonstrate the similarities between the two sources of law.

### 2.     Collateral Estoppel

Collateral estoppel generally "refers to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided."  Bilali v. Gonzales, 502 F.3d 470, 474 (6th Cir. 2007) (internal quotation omitted).  Under federal law, there are four elements for the defensive use of collateral estoppel: "(1) the precise issue raised in the present case must have been raised and actually litigated in the prior proceeding; (2) determination of the issue must have been necessary to the outcome of the prior proceeding; (3) the prior proceeding must have resulted in a final judgment on the merits; (4) the party against whom [collateral] estoppel is sought must have had a full and fair opportunity to litigate the issue in the prior proceeding."  Bills v. Aseltine, 52 F.3d 596, 604 (6th Cir. 1995).  A court may properly give collateral estoppel effect to "issues actually litigated in an arbitration proceeding between the same parties unless the procedures were unfair."  Id.  Further, defensive collateral estoppel does not require mutuality of the parties.  See NAACP, Detroit Branch v. Detroit Police Officers Assoc.,

---

[4] Under the Federal Arbitration Act, a judgment that results from court confirmation of an arbitration award has "the same force and effect" as any other final judgment on the merits.  9 U.S.C. § 13.  Plaintiffs obtained an Order confirming their arbitration award in the Eastern District of Michigan on June 6, 2011.  Accordingly, the Order confirming the award is a "prior federal judgment" for collateral estoppel purposes.

821 F.2d 328, 330 (6th Cir. 1987) (requiring only that the party against whom "estoppel is sought must have had a full and fair opportunity to litigate the issue in the prior proceeding.").

The law of issue preclusion in Michigan is nearly identical.   A court applies collateral estoppel under Michigan law when "(1) the parties in both proceedings are the same or in privity, (2) there was a valid, final judgment in the first proceeding, (3) the same issue was actually litigated in the first proceeding, (4) that issue was necessary to the judgment, and (5) the party against whom preclusion is asserted (or its privy) had a full and fair opportunity to litigate the issue." United States v. Dominguez, 359 F.3d 839, 842 (6th Cir. 2004) (citing People v. Gates, 452 N.W.2d 627, 630-31 (Mich. 1990)). This principle applies to factual determinations made during arbitration proceedings. Porter v. Royal Oak, 542 N.W.2d 905, 908 (Mich. Ct. App. 1995).   Although Gates requires the parties to be the same or in privity, the Michigan Supreme Court has since rejected the mutuality requirement for the defensive use of collateral estoppel.  Monat v. State Farm Ins. Co., 677 N.W.2d 843, 852 (Mich. 2004); see also Moses v. Dep't of Corr., 736 N.W.2d 269, 283 (Mich. Ct. App. 2007) (acknowledging that Monat dissolved the mutuality requirement for defensive collateral estoppel).

### 3.    Defendants' Collateral Estoppel Argument

The disposition of this motion turns on a question of law: whether Defendants can use collateral estoppel to establish the "no knowledge" affirmative defense under Section 32.  Because this appeal to a statutory exclusion is an affirmative defense as to which Defendants carry the burden of proof, they are entitled to summary judgment only upon a showing "sufficient for the court to hold that no reasonable trier of fact could find

14

other than for the moving party." Calderone v. United States, 799 F.2d 254, 259 (6th Cir. 1986) (internal quotation marks, citation, and emphasis omitted); see also Warner v. DSM Pharma Chemicals North America, Inc., Nos. 07-302; 07-312, 2010 WL 298307,* 1 (W.D. Mich. January 19, 2010) ("[W]here the party moving for summary judgment has the burden of proof at trial-the plaintiff on a claim for relief or the defendant on an affirmative defense-the movant faces a substantially higher hurdle." (citing Arnett v. Myers, 281 F.3d 552, 561 (6th Cir. 2002); Cockrel v. Shelby Cty. Sch. Dist., 270 F.3d 1036, 1056 (6th Cir. 2001))).

Section 32 provides that Defendants are not liable for CoW's MFIL violations if they had "no knowledge of or reasonable grounds to believe in the existence of the facts by reason of which the liability is alleged to exist." MICH. COMP. LAWS § 445.1532. The statute necessarily requires the Court to identify "the facts by reason of which the liability is alleged to exist" before it evaluates whether Defendants had "no knowledge of or reasonable grounds to believe" in those facts. Given the procedural history of this matter, the Court extracts the operative facts from the "interim" award.

In that confirmed award, the arbitrator found CoW liable for three violations of Section 8 and one violation of Section 5(b). The facts giving rise to the Section 8 violations are: (1) CoW's use a separate future earnings spreadsheet that was not otherwise incorporated into the earnings claim in the UFOC; (2) the non-disclosure in the UFOC of the differences between the predecessor business and the franchise business, and (3) the non-disclosure in the UFOC of certain environmental regulations. As the arbitrator noted, the fact supporting the Section 5(b) is duplicative of a fact used

15

to establish a Section 8 violation: the non-disclosure of the differences between the predecessor business and the franchise business

Defendants claim Plaintiffs are collateral estopped from litigating Defendants' knowledge of the above facts because the arbitrator already found that none of the Defendants had any knowledge of these facts.  Defendants' base this position on their interpretation of the arbitrator's findings made in connection with Plaintiffs' common law fraud and misrepresentation claims.  They maintain these findings conclusively establish that none of the individual Defendants had any knowledge of the facts which gave rise to CoW's liability under Sections 8 and 5(b).  The Court disagrees.

Collateral estoppel on the affirmative defense issue is unavailable to Defendants because the "same issue," "actually litigated," and "necessary to the outcome" elements of the doctrine are not satisfied.  The parties do not dispute that the dispositive issue raised in the subject motion, Defendants knowledge of the facts for Section 32 purposes, was not expressly submitted for decision in the arbitration.  As a matter of equity and common sense, the doctrine of collateral estoppel does not prevent Plaintiffs from litigating an issue that was not raised in the prior arbitration.  See Wolf v. Gruntal & Co., Inc., 45 F.3d 524, 528 (1st Cir. 1995) ("The authority of an arbitrator to decide a controversy is derived entirely from the consent of the parties.").  Neither party to the arbitration had any reason to actually litigate the "no knowledge" defense of Section 32, nor could they have because Defendants refused to be named as parties in that proceeding.  Consequently, a determination of Defendants knowledge of the facts for Section 32 purposes was not necessary for the issuance of the "interim" award.  Since

16

Defendants' knowledge of the relevant facts was never at issue in the arbitration, collateral estoppel on this matter is inappropriate.

To avoid this inescapable conclusion, Defendants recast the issue addressed in the arbitrator's common law fraud and misrepresentation findings and assign a preclusive scope to these findings far beyond what is actually stated.  A plain reading of those findings undermines Defendants' position.   The arbitrator did not find that Defendants had "no knowledge" of the facts giving rise to CoW's MFIL liability.  The arbitrator merely found that CoW did not know the complained of inaccuracies were false or misleading, a predicate element for common law claims of fraud and misrepresentation.   Defendants cannot expand this narrow finding into the broad assertion that the arbitrator categorically stated that no Defendant had any knowledge of any facts which gave rise to CoW's MFIL liability.

Whether CoW knew certain statements were false or misleading is irrelevant in resolving the question of whether Defendants knew the facts which gave to a MFIL violation.  For example, knowledge of falsity has nothing do with which Defendant knew that CoW sent future earning spreadsheets separate from the UFOC and that the UFOC did not otherwise incorporate these spreadsheets as part of the earnings claims, the factual predicates of one Section 8 violation.   Section 32 carries a rebuttable presumption that Defendants knew of the facts, or had reason to know of the facts.  As such, Defendants carry the burden of proving they did not know the same facts that created CoW's liability, and it was reasonable for them not to know.  The arbitrator's findings on the common law claims simply do not carry this burden.

17

Taken to its logical conclusion, Defendants position strangely suggests that while the arbitrator found facts that gave rise to four seperate MFIL violations, he also found that CoW's officers and directors had no knowledge of these facts. The arbitrator almost certainly would not have made such an inconsistent finding. CoW acts only through its control persons, i.e., Defendants. Someone in CoW's organizational chart likely knew or should have known the facts that gave rise to the MFIL violations because without Defendants' actions, there would be no MFIL liability. Throughout his decision, the arbitrator describes the interactions between CoW's officers and Plaintiffs which gave rise to the MFIL violations. These individuals arguably knew the facts that gave rise to the MFIL violations, though the arbitrator does not make clear who knew what. Accordingly, the record contains evidence that prevents the Court from holding that "no reasonable trier of fact could find other than for the moving party." Calderone, 799 F.2d at 259.

In sum, Defendants cannot use the arbitrator's findings on Plaintiffs' common law claims to establish their "no knowledge" affirmative defense because the "same issue," "actually litigated," and "necessary to the outcome" elements of the collateral estoppel doctrine are lacking. Therefore, Defendants' motion is denied.

### D.    Plaintiffs' Motion for Summary Judgment

Plaintiffs seek summary judgment on their Section 32 claims based on the evidence adduced in the arbitration. They maintain this evidence shows that (1) CoW violated the MFIL; (2) that Defendants are persons who either controlled COW, were its principal executive officers, or its employees who "materially aided" in the acts or

transactions constituting COW's violations; and (3) that Defendants cannot carry their burden with respect to the "no knowledge" affirmative defense of Section 32.

Defendants offer a three-fold response.  First, they are entitled to relitigate the predicate issue of whether CoW is liable for MFIL violations because they were not parties to the arbitration.  Second, reading the "materially aided" clause of Section 32 into all categories of potentially liable individuals, they claim Plaintiffs have not shown how each Defendant "materially aided" any acts or transactions which gave rise to MFIL liability.  Third, they assert there is a genuine issue of material fact on the "no knowledge" affirmative defense.  The Court addresses these issues in the ordered presented.

### 1.  CoW's MFIL Liability

Plaintiffs need not reestablish that CoW violated the MFIL.  After reviewing voluminous pre-hearing briefs, conducting a ten-day hearing with live testimony, and considering post-hearing briefs, the arbitrator made the factual determination that CoW violated the MFIL in four separate respects.  Plaintiffs have confirmed the arbitration awards finding CoW liable for these multiple violations with a federal court judgment. The Court would be doing the parties a great disservice in terms of time and cost by allowing them to relitigate the question of CoW's liability after they have already conducted a lengthy arbitration on this matter.  Accordingly, CoW's MFIL violations are considered established.

### 2.  "Materially Aided"

The parties tasked the Court with deciding whether the "materially aids" clause applies to all categories of franchisor control persons or just employees.  The relevant

part of the statute reads, "A person who directly or indirectly controls a person liable under this act, a partner in a firm so liable, a principal executive officer or director of a corporation so liable, a person occupying a similar status or performing similar functions, an employee of a person so liable who materially aids in the act or transaction constituting the violation, is also liable . . . ." MICH. COMP. LAWS § 445.1532.  There is no comma separating the phrases "an employee of a person so liable" and "who materially aids in the act or transaction."   The proper grammatical reading is that the clause "materially aids in the act or transaction constituting the violation" modifies only the last antecedent, "an employee of a person so liable".  Therefore, Plaintiffs need not allege or prove that CoW's control persons materially aided the transactions giving rise to MFIL liability.  The Court notes this interpretation is consistent with at least on other district court who interpreted a similarly worded statute.   See Shipman v. Case Handyman Servs., L.L.C., 446 F.Supp.2d 812, 814 (N.D. Ill. 2006) ("[T]he [Illinois Franchise Disclosure Act] draws a distinction between control persons, who, because they are in a position to prevent a violation, are liable unless they "had no knowledge or reasonable basis to have knowledge of the facts, acts or transactions constituting the alleged violation," and employees of such persons, who are liable only if they materially aided in the act or transaction constituting the violation.").

Having resolved the interpretive question, the Court looks to whether Defendants are individuals subject to liability under Section 32. CoW disclosed in the UFOC that Defendant John Lynch is C.E.O. and C.F.O.; Defendant Gregory Longe is President and C.O.O.; Defendant Louis Mancina is Vice President; Defendant John Maio is Vice President; and Defendant Richard Bass is Co-Director of Franchise Development.

20

(Doc. 26 Ex. I, Item 2 at 3-4).  Defendants' actions are consistent with their titles.  Longe and Bass participated in Conference calls with the Plaintiffs during the sales process. (Doc. 26 Ex. G at 1779, 1783-1784, 1883).  Longe managed the franchise development and support process, co-managed the franchisee training process with Lynch, and acknowledged he was personally involved in the franchise relationship with Plaintiffs. (Doc. 26 Ex. G at 1879, 1919-1920).  Lynch acknowledged he is responsible for all the franchisor's books and records and also for the business and financial business training of franchisees.  (Doc. 26 Ex. F at 1664).  Defendants all participated in a meet-and-greet dinner and Discovery Day with Plaintiffs.  As a practical matter, all Defendants were involved in the sales process of the franchise to Plaintiffs. (Doc. 26 Ex. F at 1596-1598, 1599-1602, 1672 1673; Ex. G at 1749-1750, 1799, 1879-1886).  The record supports the conclusion that Defendants were CoW's principal executive officers who controlled the franchisor's affairs or its employees who materially aided the transactions which gave rise to MFIL liability.  As such, they are jointly and severally liable for the arbitration award unless they can prove they had "no knowledge of or reasonable grounds to believe in the existence of the facts by reason of which the liability is alleged to exist."

### 3.    The "No Knowledge" Affirmative Defense

As discussed above, the affirmative defense in Section 32 requires the Court to identify the facts which established CoW's MFIL liability before it evaluates whether Defendants had "no knowledge of or reasonable grounds to believe" in those facts.  The Court previously outlined the relevant facts in its review of Defendants' motion.  See supra Part III.C.3.   Before reviewing the parties' positions regarding Defendants

knowledge, the Court addresses Defendants claim these facts are not alleged as a basis of liability in Plaintiffs' complaint.

Upon a comparison of Plaintiffs complaint and the bases of liability advanced in the subject motion, Defendants conclude Plaintiffs are seeking summary judgment on claims that were never pled.   The Court disagrees with Defendants' myopic interpretation of Plaintiffs' complaint.   This case was originally pled in California state court.   California state courts use "fact pleading," whereas Federal courts use "notice pleading".   Diodes, Inc. v. Franzen, 67 Cal.Rptr. 19, 22 (Cal. Ct. App. 1968).   Plaintiffs included specific factual allegations in accordance with state court pleading requirements.   They expressly noted these allegations were simply a part of the factual basis of their claims against Defendants.   See (Doc. 1 Ex. A, ¶18, ¶24).   Although the arbitrator rejected a number of the specific allegations, the purpose of their complaint is clear: to give Defendants notice that Plaintiffs are seeking to hold them jointly and severally liable under Section 32 for any violation of Sections 5(b) and/or 8 Plaintiffs establish against CoW in arbitration.   Notice pleading does not require Plaintiffs to immediately amend their complaint upon conclusion of a successful arbitration to delineate the precise operative facts of their Section 32 claims.   Defendants undeniably understood the nature of Plaintiffs claims given their positions taken in the briefs.

The Court arrives again at the "no knowledge" issue, this time in the context of Plaintiffs' motion.   Plaintiffs are entitled to summary judgment on Defendants' affirmative defense by showing "an absence of evidence to support an essential element of the non-moving party's case."   Cardinal Health 414, Inc. v. Adams, 582 F.Supp.2d 967, 986 (M.D. Tenn. 2008) (internal quotation marks omitted) (quoting FDIC v. Giammettei, 34

F.3d 51, 54 (2nd Cir. 1994). Defendants survive Plaintiffs' motion upon production of sufficient evidence from which a reasonable jury could conclude that they did not have knowledge of the facts that gave rise to CoW's liability or it was reasonable for them not to know the facts. See Lawyers Title Ins. Corp. v. United Am. Bank, 21 F.Supp.2d 785, 790 (W.D. Tenn. 1998) (explaining that "[w]hen relying on an affirmative defense, a defendant who is faced with a summary judgment motion has the same burden as a plaintiff against whom a defendant seeks summary judgment. That burden requires that the non-moving party with the burden of proof on the issue in question produce sufficient evidence upon which a jury could return a verdict favorable to the nonmoving party.").

Taking the evidence of record in a light most favorable to Defendants, the Court finds a genuine issue of material fact as to whether they knew or had reason to know of the facts which gave rise to the MFIL violations. Defendants Maio, Bass, and Longe offer affidavits regarding their lack of knowledge of the operative facts. (Doc. 30 Ex. E; Ex. F; Ex. H). Defendant Mancina testified in a deposition and at the arbitration that he never discussed any spreadsheets, financial projections, or environmental regulations with Plaintiffs. (Doc. 30 Ex. C 1602-1604; Ex. D 44-45). Defendant Lynch convincingly distinguishes the portions of the arbitration record that Plaintiffs offer in support of their argument that Lynch cannot establish the "no knowledge" defense. See (Doc. 31 at 7-9). Lynch also offers a declaration in which he attests he did not know the relevant facts. (Doc. 31 Ex. 5). On the record presented, which has not been supplemented with any discovery, Plaintiffs have failed to persuade the Court that there exists an

"absence of evidence" on Defendants' affirmative defense.   Accordingly, Plaintiffs' motion is denied.

**IV.     CONCLUSION**

For the reasons stated above, the parties' motions are both **DENIED**.

**IT IS SO ORDERED.**

s/Marianne O. Battani
MARIANNE O. BATTANI
UNITED STATES DISTRICT JUDGE


DATE:  March 2, 2012

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the above date a copy of this Order was served upon all counsel of record, electronically.

s/Bernadette M. Thebolt
Case Manager